[Civ. No. 48708. Second Dist., Div. One. Nov. 9, 1976.]

CIVIL SERVICE COMMISSION OF
LOS ANGELES COUNTY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
RONALD PRICE, Real Party in Interest.

**COUNSEL**

John H. Larson, County Counsel, and David L. Muir, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Daniel M. Luevano, Rosalyn M. Chapman, John E. McDermott, Richard A. Paez, Stanley Di Irio and Georgia Franklin for Real Party in Interest.

## OPINION

THOMPSON, J.—In *Ferguson* v. *Keays* (1971) 4 Cal.3d 649 [94 Cal.Rptr. 398, 484 P.2d 70], our Supreme Court held that there is an inherent judicial power to waive filing fees on appeal upon a showing of the appellant's indigency but expressly did not decide "the question whether indigents must be given funds by the county or some other source in order to pay transcript fees, publication costs, or other similar third-party charges." (4 Cal.3d at p. 654.) About three years after *Ferguson,* the Supreme Court denied hearing in *Leslie* v. *Roe* (1974) 41 Cal.App.3d 104 [116 Cal.Rptr. 386], which holds that indigency does not entitle a party to a civil action to a transcript prepared at public expense to aid him in appealing an unfavorable judgment. (41 Cal.App.3d at p. 107.) The matter at bench involves the application of the *Leslie* rule in the context of the right of an indigent person seeking judicial review of an administrative determination to a transcript of the administrative record at the expense of the agency where that transcript is required so that the reviewing court may exercise its independent judgment of the evidence as required by *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29].

█ Recognizing that there may be very good reasons for a contrary result, we conclude that compelling precedent dictates that a court is without power to order that an indigent person seeking judicial review of the administrative proceeding involving an economic interest be supplied with a transcript of the proceedings at the expense of the agency. Accordingly, we issue a peremptory writ overturning a trial court order directing the agency to furnish such a transcript.

Ronald Price was employed as a tram operator in a juvenile facility of the Los Angeles County Probation Department. Charged with assault with a deadly weapon upon his wife, Price pleaded guilty to the charge. On November 25, 1974, he was given notice that he was discharged from the county civil service. Price requested a hearing on the charge against him. The hearing was conducted by a hearing officer of the Los Angeles

County Civil Service Commission who determined that Price had in fact assaulted his wife with a deadly weapon, but that there were mitigating circumstances which rendered the discharge of Price from the civil service inappropriate. The commission, without an independent review of the evidence from a transcript or otherwise, adopted the findings of the hearing officer with respect to the assault but rejected his conclusion of mitigation. It ordered Price discharged.

Pursuant to Code of Civil Procedure section 1094.5, Price filed his action in administrative mandate seeking to set aside the holding of the commission. The petition asserts that the decision of the commission must be reversed because: (1) the agency failed to follow its own rule 5.14 when it declined to accept the hearing officer's report without holding a de novo hearing or reading the record of proceedings before the hearing officer; (2) the decision of the commission is not supported by substantial evidence; and (3) the penalty imposed by the commission is excessive.

Price filed a motion in the trial court asking that the commission be directed to supply him with a transcript of the proceedings before the hearing officer. The motion is accompanied by a declaration of indigency and counsel's declaration of merit satisfying the procedural requirements set forth in *Ferguson v. Keays, supra,* 4 Cal.3d 649, 657-659. The superior court in which the petition for writ of mandate was pending granted the motion and ordered that the commission "provide [Price], free of charge, a copy of the Reporter's Transcript of the Civil Service Commission hearing at issue."

The commission sought a writ of mandate or prohibition from this court to overturn the superior court's order on the motion. We issued our alternative writ.

The process of judicial review of administrative proceedings encompassed in Code of Civil Procedure section 1094.5 is a codification of certiorarified mandamus judicially adopted by our Supreme Court in *Dare v. Bd. of Medical Examiners* (1943) 21 Cal.2d 790 [136 P.2d 304]. (Kleps, *Certiorarified Mandamus* (1950) 2 Stan.L.Rev. 285; Kleps, *Certiorarified Mandamus Reviewed* (1960) 12 Stan.L.Rev. 554.) The *Dare* court, while denominating the process one in mandate, adopted its certiorari test of review in the form of a limited trial de novo based upon the administrative record. (21 Cal.2d at pp. 798-801.) Our Supreme

Court has also ruled, in *I.X.L. Lime Co.* v. *Superior Court* (1904) 143 Cal. 170 [76 P. 973], that the petitioner seeking a writ of certiorari has the burden of paying the fee for preparation of the transcript necessary for review. (See also *Fickeisen* v. *Civil Service Com.* (1950) 98 Cal.App.2d 419, 420-421 [220 P.2d 605].) The burden is thus the same as that imposed on any civil litigant in need of a transcript on appeal. That litigant's indigency does not yet excuse his payment of the transcript's cost. (See *Leslie* v. *Roe, supra,* 41 Cal.App.3d 104, petn. for hg. den.)

*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] dictates unequivocally that we follow the rule enunciated by the high court. There is no exception in *Auto Equity Sales* for Supreme Court cases of ancient vintage. If *I.X.L. Lime Co.* does not comport with the standards of review required by *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 44-45, where the party seeking judicial review is indigent, that proposition is not ours to announce.

*Crespo* v. *Superior Court* (1974) 41 Cal.App.3d 115 [115 Cal.Rptr. 681], upon which Price relies for a contrary result, is distinguishable from the case at bench. *Crespo* holds that Civil Code section 237.5's provision for government-supplied counsel to indigent parents appealing from an order depriving them of custody of children implies a right to a trial transcript at government expense so that counsel may effectively do his job. (See also *Gardiana* v. *Small Claims Court* (1976) 59 Cal.App.3d 412 [130 Cal.Rptr. 675], court's power to appoint an interpreter per Evid. Code, § 752 authorizes the court to require the interpreter to be paid at public expense where the party requiring the interpreter is indigent.) Here there is no statute upon which we can rely to reach a result contrary to the principle adopted by our Supreme Court.

Price also asserts that due process and equal protection of the law require that he be supplied with a free transcript in view of his indigent status. Authority is to the contrary where the interest which an appeal seeks to protect is an economic one. (*Ortwein* v. *Schwab* (1973) 410 U.S. 656, 659 [35 L.Ed.2d 572, 575, 93 S.Ct. 1172]; *United States* v. *Kras* (1973) 409 U.S. 434 [34 L.Ed.2d 626, 93 S.Ct. 631].)

Finally, Price argues that Code of Civil Procedure section 1094.5 by its terms authorizes the action taken by the trial court. Section 1094.5 does state: "All or part of the record of the [administrative] proceedings

... may be filed with the petition, may be filed with respondent's points and authorities or may be ordered to be filed by the court. If the expense of preparing all or any part of the record has been borne by the prevailing party, such expense shall be taxable as costs." Here, however, the superior court did not order the administrative record filed with it. Rather, it ordered that the transcript be supplied by the agency to Price. We thus do not reach the issue of the extent of power which section 1094.5 vests in the trial court to order that the agency cause the record of proceedings before it to be transcribed and the transcript filed.[1]

Bound by *I.X.L. Lime,* we conclude that the trial court was without power to order that Price be supplied with a copy of a transcript of the administrative hearing prepared at the agency's expense. Let a peremptory writ of mandate issue directing the superior court to vacate its order of April 22, 1976, and to enter a new order denying Price's motion for a transcript.

Lillie, Acting P. J., concurred.

**HANSON, J.,** Concurring and Dissenting.—The case at bench falls in the field of substantive and procedural civil law involving personal economic interests as distinguished from the field of criminal law where personal liberty may be at stake. Its posture before the superior court is on the review or appeal level as distinguished from the fact finding or trial level.

The underlying fundamental issue, framed by the briefs, is whether or not the superior court in an administrative mandamus proceeding, such as described in the majority opinion, has the authority or is otherwise

---

[1]We note that language in *Dare v. Bd. of Medical Examiners, supra,* 21 Cal.2d 790, states in effect that the primary responsibility for presentation of the administrative record to the reviewing court is upon the agency and that the agency "should have [the record] available for the benefit of the court [at trial]." (21 Cal.2d at p. 798.) We note also that Government Code section 11523, adopted as part of the Administrative Procedures Act (APA) by the same legislative session which enacted section 1094.5, provides that the agency shall prepare and deliver a transcript of its hearing to the person seeking judicial review only after that person pays for it. The issues of whether the *Dare* language is incorporated by inference in section 1094.5 of the Code of Civil Procedure and whether the companion enactment of section 1094.5 and Government Code section 11523 indicates a different burden of cost of a transcript in APA and non-APA cases should, in our judgment, be decided in a case where the issues are ripe on the record.

empowered to order, at the request of an indigent litigant, a free transcript of the fact finding hearing at public expense.

The answer to the above fundamental issue turns on whether or not there is constitutional, statutory or common law authority vesting such power in the superior court. In their thorough briefs the agency (Commission) contends there is no such authority while Price argues the opposite view.

The majority opinion, in its body, elects to base its "reversal" on the very narrow ground that the reviewing "superior court did not order the administrative record [transcript] filed with it [the court]. Rather, it [the court] ordered that the transcript be supplied by the agency to Price." It (the majority opinion in its body) expressly states it does not "reach" the critical legal issue of whether or not a civil litigant, found to be indigent, appealing an adverse finding to the superior court in an administrative mandamus proceeding pursuant to section 1094.5 has the right to be furnished a free transcript at public expense.[1]

In my view whether the superior court orders the agency to supply a free transcript at public expense to Price, an indigent, for him to file with the court in pursuit of his civil appeal *or* orders the agency to supply a free transcript at public expense to be directly filed with the court for consideration of Price's civil appeal is a distinction without a difference, sidesteps the determinative issue, resolves nothing, results in a considerable waste of time and effort by court and counsel and delays the resolution of an issue of considerable interest not only to the legal community but also to the public in general.

I would therefore address the broad fundamental issue as to whether or not there is any constitutional, statutory or common law authority vesting the superior court with the power to order the agency (here the Commission) to supply an indigent litigant (here Price) in a civil appeal (as present in the instant case) a reporter's transcript of the proceedings before the hearing officer free of charge and at public expense.

---

[1]The majority opinion in footnote 1 apparently elected to let a peremptory writ of mandate issue on the narrower ground described above and not to address the underlying fundamental issue framed by the briefs because in the majority's judgment the issue(s) are not "ripe on the record."

I respectfully disagree. In my judgment, the issue(s) are ripe on the record.

I conclude there is no such authority. My reasoning follows:

The statutory guidelines to perfecting the record for review of administrative orders or decisions are contained in the California Code of Civil Procedure, section 1094.5 (hereinafter section 1094.5).[2]

I focus on and construe section 1094.5 in light of the facts of the instant case and well established rules of statutory construction.

"The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.] Such purpose will not be sacrificed to a literal construction of any part of the act. . . ." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; see also, *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10

---

[2]Section 1094.5 appearing under chapter 2 of the code entitled "Writ of Mandate" provides in pertinent part:

"(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury. *All or part of the record of the proceedings before the inferior tribunal, corporation, board or officer may be filed with the petition, may be filed with respondent's points and authorities or may be ordered to be filed by the court. If the expense of preparing all or any part of the record has been borne by the prevailing party, such expense shall be taxable as costs.* [Italics added.]

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

"(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.

"(d) Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (e) of this section remanding the case to be reconsidered in the light of such evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case."

Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732-733 [114 Cal.Rptr. 460, 523 P.2d 260]; *Eckl* v. *Davis* (1975) 51 Cal.App.3d 831, 848-849 [124 Cal.Rptr. 685]; *People* v. *Taylor* (1975) 46 Cal.App.3d 513, 531 [120 Cal.Rptr. 762]; *Anaheim Union Water Co.* v. *Franchise Tax Bd.* (1972) 26 Cal.App.3d 95, 105-106 [102 Cal.Rptr. 692]; *Beirut Universal Bank* v. *Superior Court* (1969) 268 Cal.App.2d 832, 841-842 [74 Cal.Rptr. 333].)

In addition, "Statutes must be construed in a reasonable and commonsense manner, not in a manner that would lead to absurd consequences. The rule is well established that ' "where the language of a statute is reasonably susceptible of two constructions, one of which in application will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted." ' (*City of L.A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256-257 [330 P.2d 888]; see also, *DeCelle* v. *City of Alameda* (1960) 186 Cal.App.2d 574, 582 [9 Cal.Rptr. 549].) . . .

" ' "Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity." (45 Cal.Jur.2d 625-626.) "[I]n construing a statute the courts may consider the consequences that might flow from a particular interpretation. They will construe the statute with a view to promoting rather than to defeating its general purpose and the policy behind it." (*Id.,* p. 631.) . . .' " (*Anaheim Union Water Co.* v. *Franchise Tax Bd., supra,* 26 Cal.App.3d at p. 105.)

Here, Price points to the language in section 1094.5, subdivision (a), which says that all or part of the record "may be filed with the petition, may be filed with respondent's points and authorities or may be ordered to be filed by the court. If the expense of preparing all or any part of the record has been borne by the prevailing party, such expense shall be taxable as costs," as statutory authority supporting the superior court's order directing the Commission to furnish the reporter's transcript free of charge.

I conclude, following applications of the above described rules of statutory construction, a historical analysis of section 1094.5 and the rules of procedure for administrative review by the courts, that Price's construction of section 1094.5 is not well founded and that the language

does not authorize a shifting of responsibility for the cost of filing the reporter's transcript to the Commission. Such indigency situations would abort the legislative scheme for allocation of costs and result in unauthorized expenditures of public funds.

Prior to 1936 review of all agencies' adjudications was primarily had by way of writ of certiorari or writ of prohibition. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 138 [93 Cal.Rptr. 234, 481 P.2d 242]; Judicial Council of Cal. 10th Biennial Rep., p. 138.) In *Standard Oil Co.* v. *State Board of Equal.* (1936) 6 Cal.2d 557 [59 P.2d 119], the court held that certiorari was not available for review of decisions of state-wide agencies which did not possess constitutional judicial authority and *Whitten* v. *California State Board of Optometry* (1937) 8 Cal.2d 444 [65 P.2d 1296, 115 A.L.R. 1], foreclosed the use of prohibition in such cases. The need for a procedure of review in the courts was answered by *Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75 [87 P.2d 848], which held that review by writ of mandate was available.[3]

After a brief experience in applying the traditional rules of mandamus for review of adjudications by state-wide agencies without constitutional judicial authority (see *Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831 [123 P.2d 457]), rules of procedure peculiar to administrative review for such agencies' decisions were outlined in *Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790 [136 P.2d 304].

*Dare* determined that the respondent should include the record as part of its return to the writ or should have it available at the time of trial. If the petitioner in the mandamus proceeding was forced to prepare the record at his own expense, he could recover the cost if he prevailed in the court proceedings. As Justice Traynor pointed out in his dissent (*Dare* v. *Bd. of Medical Examiners, supra,* 21 Cal.2d at p. 804), the similarity between that rule and the procedure employed in certiorari is apparent. (See also 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 210, p. 3966.) Code of Civil Procedure section 1071 directs that a "writ of review [certiorari] must command the party to whom it is directed to

---

[3]I recognize that prior to *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], requiring an independent judgment test of the evidence, that local agencies were deemed to be vested with quasi-judicial powers and hence review by certiorari remained available. (5 Witkin, Cal. Procedure (2d ed. 1971) § 212, p. 3967.) In view of the holding in *Strumsky* and the fact that the pertinent language in section 1094.5 was derived from cases involving adjudication by agencies without judicial authority, no useful purpose would be served by summarizing the pre-*Strumsky* law regarding review of local agencies' decisions.

certify fully to the court . . . a transcript of the record and the proceedings."

*Dare* further departed from the traditional rules governing mandamus when it announced that the trial de novo referred to in *Laisne* v. *Cal. St. Bd. of Optometry, supra,* 19 Cal.2d 831, was trial upon the record of the proceedings before the agency and certain limited additional evidence. That was aptly described by Justice Traynor as "a procedure unknown at common law." (*Dare* v. *Bd. of Medical Examiners, supra,* 21 Cal.2d at p. 805.)

The Legislature in section 1094.5 (enacted in 1945 following the Judicial Council's extensive procedural study of state-wide administrative agencies and of the judicial review of agencies' decisions)[4] extended *Dare's* two procedural rules to all adjudications reviewable by administrative mandamus and thereby adopted one rule closely akin to, but not identical with, certiorari, and another rule unknown at common law.[5] I conclude that viewed in either light section 1094.5 cannot be interpreted to mean that the agency, here the Commission, must bear the initial costs of preparing the record.

[4]The Judicial Council stated: ". . . the transcript of proceedings before the board is sometimes attached as part of the petitioner's pleading, sometimes attached to the respondent's return to the writ, and sometimes introduced in evidence at the court hearing. It has been indicated that the respondent board should normally attach the record as part of its return or have it available at the trial for the use of the court. . . ." (Judicial Council of Cal. 10th Biennial Rep. p. 142.)

[5]Although the majority in *Dare* broke new ground in outlining a method of review of adjudications by state-wide agencies, *Dare* does not contain one word about who shall bear the costs for the initial preparation of the record. Likewise, the Judicial Council's extensive procedural study fails to discuss who is initially responsible for the cost of producing the record when review of local agencies' decisions is sought. The Judicial Council did, however, recommend (and the Legislature adopted in Gov. Code, § 11523) that as to state-wide agencies the aggrieved party should bear the initial cost. Nowhere in the study is there any indication that that was intended to be a procedural change in the then existing law or that it was a procedure at odds with section 1094.5. Indeed, the Judicial Council and the Legislature in enacting section 1094.5 and the Administrative Procedure Act merely supplemented the existing statutes on mandamus by including a number of provisions applicable to administrative review in the courts (§ 1094.5) and set forth in clear and concise terms the rules applicable to state-wide agencies. (Gov. Code, §§ 11370-11528.) No comparable study of local agencies was undertaken because the procedural limitations of *Standard Oil, supra,* and *Whitten, supra,* applied only to state-wide agencies.

The plain fact remains that neither *Dare,* the Judicial Council nor the Legislature considered who should bear the initial costs of preparing the record when review of local agencies' adjudications was sought. The silence on the part of the Judicial Council and the Legislature can at most mean that as to local agencies the traditional rules of mandamus apply as in the absence of a contrary provision in section 1094.5.

To further buttress the above conclusion it is noted that the direction in Code of Civil Procedure section 1071[6] as to the preparation of a transcript upon the issuance of the writ of certiorari is not intended to shift the cost of preparing the record from the petitioner seeking relief. (See *I. X. L. Lime Co.* v. *Superior Court* (1904) 143 Cal. 170 [76 P. 973].) If the language in section 1094.5 that the record "may be ordered to be filed by the court" is deemed the same as the procedure employed in a writ of certiorari, it also would not shift the cost of preparing the record.

Furthermore, if section 1094.5 outlines a procedure unknown at common law, the absence of an express direction as to the payment of the cost of producing the record cannot mean that the Legislature intended that the agency would bear the cost. *If such a result were intended, the Legislature would not have also provided in section 1094.5 that the prevailing party may recover the cost of the record.*

In addition, Government Code section 11523, a part of the Administrative Procedure Act applicable to certain state-wide agencies which was enacted at the same time as section 1094.5, expressly directs that the agency shall prepare the record *upon the payment of fees* as specified in Government Code section 69950.[7]

Nor does application of the rules pertaining to traditional mandamus change the result. An action in mandamus is a special proceeding of a civil nature. (Cal. Administrative Mandamus (Cont. Ed. Bar) § 1.5, p. 8.) There is no provision in the statutes applicable to mandamus (Code Civ. Proc. §§ 1084-1097, 1107-1110b) from which it could be inferred that the

---

[6]Section 1071 of the code entitled "Contents" provides: "The writ of review must command the party to whom it is directed to certify fully to the court issuing the writ at a time and place then or thereafter specified by court order a transcript of the record and proceedings (describing or referring to them with convenient certainty), that the same may be reviewed by the court; and requiring the party, in the meantime, to desist from further proceedings in the matter to be reviewed. (As amended Stats. 1963, ch. 461, § 2, p. 1309.)"

[7]In explaining the relationship between section 1094.5 and Government Code section 11523, the Judicial Council stated: "[T]he proposed section of the administrative procedure act specifies what a complete record of the administrative proceeding consists of, but permits the petitioner to designate whatever portion of the record he chooses to submit to the court. The agency can submit the rest of the record or the court can order that it be submitted under the proposed Sec. 1094.5 of the Code of Civil Procedure. A provision is made for an extension of the time for filing the petition for mandate where the agency delays in preparing the record after it has been requested by the petitioner. The agency is also permitted to file the original of any document in lieu of a copy thereof." (Judicial Council of Cal. 10th Biennial Rep. p. 28.)

Legislature intended that a petitioner in mandamus would receive the benefit of a free transcript.

In *Fickeisen* v. *Civil Service Com.* (1950) 98 Cal.App.2d 419 [220 P.2d 605], the petitioner a permanent civil service employee assigned to the Department of Public Health was discharged pursuant to an accusation duly filed and heard by the county civil service commission charging him with misappropriation of county property. He filed two separate actions in the superior court to review the proceedings before the commission and to effect his reinstatement—one in certiorari and one in mandate. He appealed from an adverse judgment in the superior court.

The appellate court in *Fickeisen* said: "We do not find any portion of the reporter's transcript covering the oral evidence heard by the commission. Since it was incumbent upon the petitioner—both in mandate and certiorari—to prepare and file in the superior court a transcript of such testimony if he wished to contend that the evidence was insufficient, his failure to do so precludes an attack on the evidence on this appeal. (*McPheeters* v. *Board of Medical Examiners,* 74 Cal.App.2d 46 [168 P.2d 65].) And see *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790, 794 [136 P.2d 304]." (Pp. 420-421.) The court, however, accepted as true all petitioner's references to and quotations from the transcript to save him unnecessary expense and delay and affirmed the judgment of the superior court.

I agree with the majority opinion that *Crespo* v. *Superior Court* (1974) 41 Cal.App.3d 115 [115 Cal.Rptr. 681], relied on by Price is clearly distinguishable. In *Crespo* the appellate court issued a peremptory writ of mandate to compel the superior court to order free transcripts for indigent petitioners, which the trial court had refused to do relying on *Rucker* v. *Superior Court* (1930) 104 Cal.App. 683 [286 P. 732].

In *Crespo* a petition for writ of mandate to compel the Superior Court of Los Angeles County to provide without cost to petitioners a clerk's transcript and reporter's transcript on appeal from a judgment of the superior court was filed by petitioners (natural parents of two minor children). Pursuant to Civil Code section 232 real party in interest Los Angeles County Department of Adoptions filed a petition to have the minors freed from parental custody and control. The trial court found pursuant to section 232 that in the best interests and welfare of the minors they should be freed from the custody and control of their natural parents, and entered judgment accordingly.

Thereafter petitioners (natural parents) appealed from the judgment and moved that they be provided a clerk's transcript and reporter's transcript without cost, alleging that they were indigent and could not afford the transcripts which were necessary in order to argue on appeal the issue of sufficiency of the evidence to support the judgment. They sought an order to the clerk of the superior court directing him to prepare or cause to be prepared a clerk's transcript and reporter's transcript on appeal without cost to petitioners.

The appellate court concluded that the trial court has authority to order transcripts on appeal at county expense for indigent parents in a Civil Code section 232 proceeding, when such transcripts are necessary for appellate review, stating: "We adhere to the general rule, relied upon by the trial court, that the ordinary civil litigant is not entitled to free transcripts on appeal at public expense. (*Rucker* v. *Superior Court, supra*; *Kaufman* v. *Brown,* 106 Cal.App.2d 686, 688-689 [235 P.2d 632]; *Legg* v. *Superior Court,* 156 Cal.App.2d 723, 724-725 [320 P.2d 227]; *Agnew* v. *Contractors Safety Assn.,* 216 Cal.App.2d 154, 156 [30 Cal.Rptr. 690], cert. den., 375 U.S. 976 [11 L.Ed.2d 421, 84 S.Ct. 496]; *Leslie* v. *Roe, ante,* p. 104 [116 Cal.Rptr. 386]). But we find the general rule inapplicable here in light of the Legislature's policy, as indicated by Civil Code section 237.5, to protect the interests of indigent parents whose relation with their children is terminated by a Civil Code section 232 proceeding," (*Crespo* v. *Superior Court, supra,* 41 Cal.App.3d at p. 120). The court noted that "Under section 237.5 the court shall order the cost paid 'by the real parties in interest, other than the minor, in such proportions as the court deems just' or 'if the court finds that none of such real parties in interest is able to afford counsel, such amount shall be paid out of the general fund of the county.' " (P. 119, fn. 4.)

The distinctions between *Crespo* and the instant case are apparent. In *Crespo* involving termination of a natural parent's right to custody and control of two natural children the court acknowledged the general rule against supplying free transcripts for indigents but found it inapplicable in light of the Legislature's intent in Civil Code section 237.5 under that factual situation. Here, section 1094.5 is applicable, and there is no comparable legislative authority to appoint counsel for Price at county expense.

Accordingly, I conclude that, in the absence of a statutory provision to the contrary, Government Code section 69953 requiring that the civil litigant requesting the record pay the fees for the cost of the record

applies and there is no statutory or case law authorizing the court below to shift the costs for a reporter's transcript from Price to the Commission.

I further conclude the superior court does not possess the inherent power to order, absent statutory or case authority, an administrative agency, whose action an indigent civil litigant seeks to have reviewed, to furnish, at public expense, a free reporter's transcript for purposes of review.

Here, Price contends that the superior court pursuant to its inherent power to grant in forma pauperis relief also has the inherent power to order relief as to fees for the cost of transcripts by ordering the Commission, from whose order he seeks a review, to supply the transcript free of charge.

In the instant case no authority has been cited for the proposition that there was a common law right to a free reporter's transcript in a civil action upon a showing of indigency and research has disclosed none.[8]

The cases in which a common law right was found to proceed in forma pauperis have dealt with the waiver of various fees (see *Ferguson* v. *Keays* (1971) 4 Cal.3d 649 [94 Cal.Rptr. 398, 484 P.2d 70] (filing fee on appeal); *Majors* v. *Superior Court of Alameda Co.* (1919) 181 Cal. 270 [184 P. 18, 6 A.L.R. 1274] (jury fees); *Roberts* v. *Superior Court* (1968) 264 Cal.App.2d 235 [70 Cal.Rptr. 226] (cost bond)) and not with a direct shift in costs to a civil adversary prior to decision and are therefore inapplicable.

Insofar as a transcript of the Commission's proceedings may be required under Code of Civil Procedure section 1094.5, the administrative mandamus proceeding can be viewed as something closely analogous to an appeal.

All California cases which have considered the ordinary civil litigant's right to a free transcript on appeal have denied that such a right exists. (*Leslie* v. *Roe* (1974) 41 Cal.App.3d 104 [116 Cal.Rptr. 386]; *Agnew* v. *Contractors Safety Assn.* (1963) 216 Cal.App.2d 154 [30 Cal.Rptr. 690]; *Legg* v. *Superior Court* (1958) 156 Cal.App.2d 723 [320 P.2d 227];

---

[8]Such lack of authority is not surprising in light of the marked difference between present procedure and that which existed at common law. (See 2 Pollack & Maitland, History of the English Law, pp. 664-670; Note, *Appellate Review in California with the Extraordinary Writs*, 36 Cal.L.Rev. 75, 79.)

*Kaufman* v. *Brown* (1951) 106 Cal.App.2d 686 [235 P.2d 632]; *Rucker* v. *Superior Court, supra,* 104 Cal.App. 683 (overruled on other grounds in *Ferguson* v. *Keays, supra,* 4 Cal.3d 649).) The Supreme Court in *Ferguson, supra,* expressly refused to decide if an indigent was entitled to a free transcript in a civil appeal and it only stands for the proposition that appellate filing fees may be waived upon a showing of indigency.

By reason of the foregoing, I conclude that the superior court does not have the inherent power to order an administrative agency to supply, free of charge, a reporter's transcript to an indigent litigant who seeks a review of the agency's (here the Commission) order before that court.

Moreover, if the lower court intended in its order that the county, in contrast to the Commission named in the action, should bear the cost of preparing the transcript, no authority giving the superior court the power to disburse such public funds has been cited. In fact, *Rucker* v. *Superior Court, supra,* 104 Cal.App. at p. 685, stated: ". . . There is no legal mode of requiring payment therefor [for the reporter's transcript] out of the public treasury." Although *Ferguson* v. *Keays, supra,* overruled dicta in *Rucker* concerning the common law right to appeal in forma pauperis, *Ferguson* did not in any manner question *Rucker*'s determination as to payments from public funds. Indeed in the recent case of *Payne* v. *Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565], the Supreme Court stated that it was for the Legislature to appropriate the funds if the charge for the appointed counsel for an indigent present in a civil action is to be paid from public moneys.

I further conclude that an indigent civil litigant's constitutional right to due process and equal protection of the laws is not violated by refusal to supply a free reporter's transcript of an administrative agency's hearing which he seeks to have judicially reviewed.

Price's contention that *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, establishes that he, in requesting a free transcript, is asserting a right of fundamental constitutional dimension is in error.

*Strumsky* merely determines that there is no justification for the application of one judicial standard of review for decision by state-wide agencies of legislative origin and another standard of review for decisions of local agencies. It holds that if the local agencies' decision affects the administrative concept of a fundamental and vested right, that decision,

like the decision of a state-wide agency of legislative origin, is to be reviewed under the independent judgment standard. *Strumsky* does not purport to force the agency to pay the cost of producing a transcript or change any other facet of procedure required to obtain administrative review in the courts. *Valenzuela* v. *Board of Civil Service Comrs.* (1974) 40 Cal.App.3d 557 [115 Cal.Rptr. 103], likewise merely determines that the threatened loss of civil services requires application of the independent judgment standard of review.

As noted *Strumsky* dealt only with the nature of a right which would trigger a more intensive test of judicial review. At stake here is not the abstract right to review under a particular evidentiary test. Here, the issue is whether an indigent litigant in an action to review an administrative order of discharge from civil service employment can force an agency (or other governmental body) to bear the costs of producing a record of earlier proceedings. The fact that an administrative decision under review affects a fundamental and vested right under the teaching of *Strumsky* does not mean that a fortiori a request for a free transcript in an administrative mandamus proceeding touches a fundamental interest for equal protection and due process purposes. I would hold it does not.

In *Alex* v. *County of Los Angeles* (1973) 35 Cal.App.3d 994, 1000-1001 [111 Cal.Rptr. 285], this court said:

"Case law has developed a two-level standard in evaluating legislative classifications under the 'equal protection' clause. The traditional test is that there is a presumption of constitutionality which will not be overthrown by the courts unless it is palpably arbitrary and beyond rational and reasonable doubt erroneous and no set of facts reasonably can be conceived that would sustain it. This traditional test is usually applied to 'economic' regulations.

"The other, and stricter, standard is employed in cases involving 'suspect classifications' or 'fundamental interests.' Here the courts take a close look at the classification and require not only a *compelling* state interest which justifies the law, but also that the distinctions drawn by the law are *necessary* to further its purpose. (*In re Antazo,* 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999]; *California State Employees' Assn.* v. *Flournoy,* 32 Cal.App.3d 219 [108 Cal.Rptr. 251].)" (Original italics.)

No case has held that discrimination based upon wealth alone compels the application of the stringent compelling interest test. (Note, *Current Prospects for An Indigent's Right to Appointed Counsel and a Free Transcript in Civil Litigation,* 7 Pacific L.J. 149, 156.)[9] Although Price has been afforded a forum for judicial review by California law, the *right* to judicial review of a dismissal from civil service employment is not among the existing fundamental constitutional rights listed in *People* v. *Olivas* (1976) 17 Cal.3d 236, 245-246 [131 Cal.Rptr. 55, 551 P.2d 375].

Here, Price is treated no differently from any other indigent civil litigant who must bear the cost of presenting evidence in the trial court and the cost of a transcript on appeal if review of a decision by an inferior tribunal is sought. No possible loss of liberty is at stake here in contrast to the situation in *Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055] (appeal of felony conviction); *Gardner* v. *California* (1969) 393 U.S. 367 [21 L.Ed.2d 601, 89 S.Ct. 580] (habeas corpus); and *Williams* v. *Oklahoma City* (1969) 395 U.S. 458 [23 L.Ed.2d 440, 89 S.Ct. 1818] (misdemeanor conviction).

The interest here as in *Ortwein* v. *Schwab* (1973) 410 U.S. 656 [35 L.Ed.2d 572, 93 S.Ct. 1172], " 'is in the area of economics and social welfare.' [Citations.] No suspect classification, such as race, nationality, or alienage, is present. [Citation.] The applicable standard is that of rational justification. [Citation.]" (P. 660 [35 L.Ed.2d p. 576].)

I also conclude that the due process clause is not violated by the denial of a free transcript. Price has been accorded a right to be heard in

---

[9]Contrary to Price's assertions, *Lee* v. *Habib* (1970) 424 F.2d 891 [137 App.D.C. 403], did not hold that the Constitution mandates that there be no discrimination on the basis of wealth. *Lee* (at p. 902) expressly stated: ". . . it is unnecessary that we determine the extent to which the Constitution requires it to end all distinctions between rich and poor in the courts, or to provide indigent civil litigants with transcripts on appeal. Moreover, despite the compelling arguments which can be marshalled to show that transcripts are constitutionally required for civil appeals presenting substantial issues, our holding today is not such a ruling. Instead, mindful of our obligation to avoid reaching the constitutional issues whenever possible, we proceed to consider the applicable federal and District of Columbia statutes, impelled—if not compelled—to equalize the opportunities of rich and poor to obtain appellate review."

*Lee* then proceeded to hold that under 11 District of Columbia Code section 935 and 28 United States Code section 753 ". . . the United States must pay for transcripts for indigent litigants allowed to appeal *in forma pauperis* to the District of Columbia Court of Appeals if the trial judge or a judge of the DCCA certifies that the appeal raises a substantial question the resolution of which requires a transcript. . . ." (P. 904.)

Thus, in view of *Lee*'s express refusal to base its decision upon constitutional grounds, we find it persuasive authority only for the proposition that the California Legislature may by statute provide indigents with free reporter's transcripts. As previously discussed the California Legislature has not to date seen fit to enact such a statute.

conformity with the due process rights as set forth in *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]. A full hearing and an administrative review of that hearing has been provided. Due process requires notice and effective opportunity to be heard but the type of remedy provided need not necessarily be a judicial remedy. (*Ortwein* v. *Schwab, supra,* 410 U.S. 656; *United States* v. *Kras* (1973) 409 U.S. 434 [34 L.Ed.2d 626, 93 S.Ct. 631]; *Payne* v. *Superior Court, supra,* 17 Cal.3d 908.) Here, Price has not been denied access to a forum as was the case in *Boddie* v. *Connecticut* (1971) 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780], and in *Payne, supra.* In *Boddie* the plaintiff could not obtain a divorce without resort to the court. In *Payne* the prisoner by reason of his incarceration in a state prison had no real possibility of defending in any forum.

Finally, I address the practical as opposed to the technical aspect of the case at bench.

Appellate courts must give statutes "reasonable and common sense construction" in accordance with the "apparent purpose and intention of the lawmakers" in a manner "practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity" and consider "the consequences that flow from a particular interpretation." (*Anaheim Union Water Co.* v. *Franchise Tax Bd., supra,* 26 Cal.App.3d 95, 105.)

In my opinion the apparent legislative purpose of requiring, even in administrative mandamus proceedings, that a party requesting a transcript pay the cost is based on the fact that if the costs of preparing such transcripts were thrust upon the courts it would drastically and unrealistically increase the cost of judicial administration to the taxpayers.

The shifting of costs of reporter's transcripts to the public agency where indigent litigants seek judicial review, as present in the instant case, would drastically increase the public's total cost of judicial administration since a public agency must recover its costs from the taxpayers.[10]

The Legislature never contemplated or intended such a result in the indigency situation in formulating the legislative scheme for allocation of

[10]No figures as to the estimated costs of providing free transcripts for proceedings before "the thousands of local boards in this state" referred to by Justice Burke in his dissent in *Strumsky* are known, but the number of identifiable indigents involved in the federal administrative process is staggering—in 1969 numbering over 16 million.

costs. Under our tripartite form of government with its checks and balances it is the function of the legislative branch with the power of the purse to raise and expend public funds to provide for such a result. It cannot be done by judicial order.

In summary, here Price was discharged from his civil service employment as a tram operator with the probation department.[11] He was afforded a hearing which resulted in a recommendation of reinstatement following which the Commission, adopting substantially all the findings of the hearing officer, sustained the order of discharge. Price then "appealed" to the superior court. The superior court declared Price an *indigent* and ordered the Commission to supply a $600 reporter's transcript of the hearing to Price, free of charge, for use in his "appeal."

---

(See *Trumpets in the Corridors of Bureaucracy: A Coming Right to Appointed Counsel in Administrative Adjudicative Proceedings*, 18 UCLA L.Rev. 758, 786.)

The magnitude of costs of reporter's transcripts is apparent when considering that it has been estimated that nationally reporter's fees total $250 million or more annually. (Hyatt, *Trying Days in Court—Shorthand Reporters Fear Use of Computers To Speed Their Work Will Cut Status, Income.* Wall Street Journal (Sept. 22, 1976) p. 36.)

Here the cost of the transcript is $600 but for illustration purposes only, as to the magnitude of reporter transcription fees and costs and for no other purpose, I take judicial notice of the public file in the case of *Graves* v. *Commission on Professional Competence*, 2d Civil No. 47774 (Super. Ct. No. C 99895) in which an *indigent* litigant appealed from an order of the superior court denying a free transcript on appeal which cost between $15,000 to $20,000 for 23 days of testimony. (Reversed on other grounds in an unpublished opinion filed Oct. 20, 1976.)

[11] The following letter from Clarence E. Cabell, acting chief probation officer by Gordon K. Pedersen, assistant probation officer, dated November 25, 1974, was addressed to Price's home address:

"Dear Mr. Price:

"You are hereby notified that at the end of the business day, Thursday, December 5, 1974, you are discharged from your position of Tram Operator and from County service.

"The following constitutes grounds for your discharge:

"On November 4, 1974, you were arrested by officers of the Compton Police Department for violation of Section 217 of the California Penal Code, Assault With Intent to Commit Murder. In this incident it is alleged that you shot your wife, Mrs. Doretha Price, inflicting a two-inch scalp wound. Such behavior is incompatible with your position as a Tram Operator and with your position as a Probation Department employee.

"As a Tram Operator in a juvenile institution, you are in constant contact with juvenile court wards who are sometimes assaultive and abusive to staff members. The Department is charged with the protection of those wards placed in its care and therefore, any possible threat to their safety must be carefully controlled.

"By your behavior, you have demonstrated the capacity to act out in a violent and dangerous manner. It is, therefore, necessary to discharge you to forego any possibility of injury to court wards with whom you may have contact.

"Civil Service Commission Rules give you the right, as a permanent employee, to appeal this action and request a hearing before the Commission. Your letter should

I conclude, for the reasons hereinbefore discussed, whether the superior court orders the Commission to furnish the reporter's transcript to Price for use in his appeal *or* to the court for use in Price's appeal there is no constitutional, statutory or case law authorizing such an order.

In either instance the superior court could only reasonably contemplate and assume that the cost of the reporter's transcript must necessarily be paid for by the taxpayers since the costs would be theoretically and presumably unrecoverable from Price, a declared indigent. Such an order, therefore, in either instance, ignores the legislative scheme for allocation of costs *and* results in the expenditure of public funds for reporter's transcripts to assist in *the appeal of a civil matter involving personal economic interests* which is *not* sanctioned by law.

Accordingly, I would hold the superior court's order granting Price's motion for a free transcript constitutes an abuse of discretion. Mandate is an appropriate remedy to control an abuse of discretion by the superior court. (*Terzian* v. *Superior Court* (1970) 10 Cal.App.3d 286 [88 Cal.Rptr. 806].)

I would let a peremptory writ of mandate issue, not on the very narrow ground in the majority opinion (found in the record but *not* argued in the briefs) but on the determinative issue (as argued in the briefs). I would order the superior court to vacate its order of April 22, 1976, granting Price's motion for an order providing a free reporter's transcript on appeal and thereafter to enter a new and different order denying the motion.

A petition for a rehearing was denied December 3, 1976. Hanson, J., was of the opinion that the petition should be granted. The petition of the real party in interest for a hearing by the Supreme Court was denied January 19, 1977.

---

contain a general denial of the assertions or facts. Written responses and requests for a hearing must be sent within ten (10) business days of service of this notice to the Civil Service Commission, 222 North Grand Avenue, Los Angeles, California 90012. A copy should also be sent to Philip Stein, Personnel Officer, Probation Department."